**In re INFOREX, INC., Debtor.**

**No. 79–01966–L.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 2, 1979.

Hale & Door by Frederick G. Fisher, Jr., and Paul P. Daley, Boston, Mass., for debtors.

William H. Tucker, U. S. Trustee, Dept. of Justice, Boston, Mass.

Ropes & Gray by William F. McCarthy, Charles P. Normandin, and John Silas Hopkins, III, Boston, Mass., for First National Bank of Chicago and Industrial National Bank of Rhode Island.

Sherman I. Goldberg, Chicago, Ill., Choate, Hall & Stewart by Robert M. Gargill, Boston, Mass., for Wells Fargo Leasing Corp.

Krause, Hirsch & Gross by Jack Gross, New York City, for Manufacturers Hanover Leasing Corp.

Goodwin, Procter & Hoar by John Evan Jones, Boston, Mass., for New England Merchants Funding Corp., formerly New England Merchants Leasing Corp.

Gitlitz, Ronai & Berchem, P. C. by Robert L. Berchem, and Marsha Belman Moses, Milford, Conn., for Citytrust.

Sherman & Sterling by Eric C. Little, New York City, for Citibank, N. A.

Goodwin, Procter & Hoar by Jon Schneider, Boston, Mass., for Knox Leasing.

Testa, Hurwitz & Thibeault by Edmund C. Case, Boston, Mass., for United States Portfolio Leasing, Inc.

## ORDER

THOMAS W. LAWLESS, Bankruptcy Judge.

Dated at Boston, Massachusetts, in said District, this 2nd day of November, 1979.

This matter having come on before this Court on the Debtor's Application To Use Cash Collateral, notice of said application having been given to the secured lenders and some but not all third party lessors, and counsel for the Debtor and certain secured lenders and third party lessors having been heard and based upon testimony taken and other evidence introduced and arguments presented at said hearing, I make the following Findings of Fact:

1. Prior to the commencement of the reorganization proceeding, the Debtor was financed through various lending, financing, agency and other agreements with the following:

The First National Bank of Chicago ("Chicago Bank")

Industrial National Bank of Rhode Island ("Rhode Island Bank")

First National Bank of Boston ("Boston Bank")

New England Merchants Funding Corporation ("Merchants Funding" formerly known as New England Merchants Leasing Company E ("Merchants Leasing"))

Manufacturers Hanover Leasing Company ("Manufacturers Leasing")

Citytrust ("Connecticut Bank")

Wells Fargo Leasing Company ("Wells Fargo")

Citibank, N.A. ("Citibank")

Lease Financing Corporation ("LFC")

Knox Leasing Corporation ("Knox")

United States Portfolio Leasing, Inc. ("U. S. Leasing")

(collectively referred to hereinafter as the "Financing Group").

2. Prior to the commencement of the reorganization proceedings herein, the Debtor maintain various depository, special purpose and operating accounts with the Banks set forth on Schedule A [omitted from publication] (the "Depository Accounts").

3. Pursuant to the terms of the various agreements, lessees of equipment remit payment to certain Depository Accounts.

4. In order to remain a viable corporation, the Debtor must pay its employees and its commission salesmen for the work performed and expenses incurred. In addition, it must purchase for cash the necessary parts and supplies needed to produce the products ordered by its customers and lessees, and provide spare parts for its field maintenance employees and lessees. It must also provide heat, telephone, electricity and other utility services to its factory and its various offices throughout the country.

5. In order to make the purchases, commitments and payments required above, the Debtor must employ the funds presently collected in the Depository Accounts and the funds which will come into the Depository Accounts on a daily basis. The estimated amounts needed for each category of expense are set forth on page 17 of Schedule B hereto [omitted from publication] (which is the Debtor's "Business Plan" (new title) marked as Exhibit A at the hearing) under the caption "Disbursements".

6. The use of the funds will enable the debtor to ship for immediate payment equipment already produced, meet certain production orders and maintain leased equipment in the field. If the leased field equipment is not maintained, the rents owed by lessees will not be forthcoming.

7. The Debtor owns and controls the stock of:

Inforex, GmbH (Germany)

Inforex A.G. (Switzerland)

Inforex France S.A.R.L. (France)

Inforex B.V. (Netherlands)

Inforex Italiai, Spa. (Italy)

Inforex, Ltd. (United Kingdom)

Inforex GesmbH (Austria)

(the "Foreign Subsidiaries") which stock has not been pledged by the Debtor and has considerable value in excess of $5,600,000.

8. In the event the operating funds necessary to continue the Debtor's business are not made available, the Debtor will have to be liquidated under Chapter 7 and this will result in a termination of the Debtor's maintenance services to the users of its equipment and a sharp drop in the going concern value of the income streams and the inventory as shown on pages 14 and 17 of the Debtor's Business Plan Exhibit B (marked Exhibit A at the hearing). For example, the Debtor's Chief Financial Officer testified that the experience with customers who failed to pay on purchase or lease contracts or for maintenance after complaints as to maintenance indicated that the gross receipts would drop by 75% within 45 days after the Debtor ceased operations. That witness also testified that within the last month the Debtor had attempted to sell a portion of its inventory with a book value of $300,000 and had received as the highest bid an offer of $10,000. The inventory offered for sale was from that type of inventory which is newest and which represents 60% of all the Debtor's inventory.

9. There is a question as to whether the revenues from the Debtor's maintenance operation should be subject to a security interest under the power granted this Court

by Section 506(a) of the Bankruptcy Code. There was uncontradicted testimony at the hearing that the cost of providing maintenance services exceeded the revenue received from such services not including any portion of general and administration expenses properly allocable to the maintenance services.

10. Page 17 of the Debtor's Business Plan (included as Exhibit A at the hearing), reflects the projected cash flow of the Debtor in the form of gross receipts and gross disbursements through January 4, 1980. The estimates contained in said Business Plan were prepared completely in good faith and represented a reasonable forecast.

11. During this hearing no allegations were made or introduced of any fraud, dishonesty, incompetence, misconduct, mismanagement or any other irregularity in the management of the affairs of the Debtor by current management who, although experienced, were appointed in a reorganization by the Debtor's management only within the last two weeks. I would have expected none since the matter was not in issue.

I make the following Rulings of Law:

1. To the extent that the funds in the Depository Accounts existing prior to the commencement of the reorganization proceedings and the funds remitted to the Depository Accounts or otherwise received by the Debtor during the reorganization proceedings constitute "cash collateral", as that term is defined in Section 363(a) of the Bankruptcy Code, in which one or more of the Financing Group has an interest or claims ownership thereof (hereinafter "cash collateral"), "adequate protection" for the use of such cash collateral is provided to said party or parties by the continued remittance of payments to the Debtor of the gross receipts of rental leases, maintenance contracts, sales to distributors and end users, and payments from subsidiaries, and as a loan entitled to a first priority expense of administration status, and secured by a security interest in substantially all of the assets of the Debtor including a pledge of the stock of the European Subsidiaries.

In is therefore ORDERED, ADJUDGED AND DECREED:

1. That the Debtor be and hereby is authorized to maintain the depository, special purpose and operating accounts set forth on Schedule A. Said accounts may keep the same account numbers, signatories and checks which were in existence as of the commencement of the reorganization proceedings except with respect to signatories which have been changed by the Debtor.

2. The Debtor be and hereby is authorized to make deposits in said accounts, receive payments and transfers therefrom in the ordinary course of its business and all persons owing moneys to the Debtor for goods sold or leased or services rendered are ordered to continue to make payments to the Debtor or designated depositories in accordance with their contracts or obligations to the same effect as before the commencement of this proceeding.

3. The Banks set forth on Schedule A are directed and empowered to honor all checks, drafts and wire transfer orders on said accounts dated October 23, 1979 and thereafter to the extent of funds on deposit. New England Merchants National Bank, The First National Bank of Boston and Old Colony Bank and Trust Company of Middlesex County are authorized to honor all checks and drafts for payroll and payroll related expenses and employee expenses dated prior to the commencement of the reorganization proceedings to the extent of funds on deposit.

4. The Banks set forth on Schedule A be and hereby are ordered to turn over the Debtor or pay as directed by the Debtor through checks, wire transfers or drafts all funds in said accounts which were on deposit at the commencement of the proceedings and all funds which will be remitted to or deposited in such accounts through November 30, 1979.

5. The Debtor be and hereby is directed to deliver to the Financing Group, with copies to be filed with the Clerk of this Court and the U.S. Trustee, a weekly

accounting of all cash receipts and cash disbursements by category, substantially in the form used on page 17 of Schedule B hereto. To the extent reasonably practicable the Debtor will attempt to identify the source of said cash receipts in accordance with the various leasing, financing or agency agreements with the Financing Group.

6. The obligation of the Debtor to the Financing Group for the turnover of cash collateral shall be evidenced by a note or notes to the Financing Group or members of the Financing Group, as appropriate, which note or notes will be first priority costs of administration and will be secured by all of the assets of the Debtor including assets acquired during the proceedings and the proceeds thereof and by a pledge of the stocks of the European subsidiaries so as to provide adequate protection subject only to presently existing liens. Said note or notes shall bear interest at the rate of 12% per annum and be payed pursuant to further order of this court or may be prepaid in whole or in part by the Debtor.

7. The Debtor be and hereby is authorized to pay up to $11,000 in payroll and payroll related expenses for the period prior to the commencement of the proceeding which were not paid pursuant to the Order of Court entered on October 26, 1979.

8. The Debtor be and hereby is authorized and directed to terminate up to 277 of its employees in accordance with its Business Plan as testified to at this hearing and as shown on Debtor's Exhibit "A" marked at this hearing, but until further order of this court is not to make any severance payments to said employees.

9. To the extent that contributions into the Employee Retention Plan—1979 Account at the BayBank Middlesex, N.A. have been made by the Debtor prior to the commencement of the reorganization proceedings for and on behalf of the terminated employees, such employees may be paid their interest therein up to an aggregate maximum amount of $30,000 for all such employees.

10. The precise interest of each member of the Financing Group in the funds remitted to the Debtor shall be determined by either an agreement among the members of the Financing Group filed as a stipulation in this proceeding or by further hearing of the Court pursuant to the filing of an appropriate pleading and this court will later determine when and what payments shall be made to creditors claiming an interest in such funds.

11. Any funds in excess of the expenses incurred in the operation of the Debtor's business shall be held by the Debtor in its depository accounts until further order of this Court and may be used to make the payments provided for by the preceding paragraph 10 with any balance remaining to be available for the payment of the notes to be provided under paragraph 6 hereof.

12. The Debtor may make a deposit with all persons, firms and corporations delivering, providing or serving the Debtor with gas, telephone service, heat, electric service, water supply, or any other utility of like kind or service furnished to said Debtor (hereinafter referred to as "Utilities") equal to one month of the average billing for the previous year for said services with said Utilities in lieu of all other remedies which the Utilities may have to provide security for the Utilities during the Reorganization Proceedings.

13. That the Debtor, be and hereby is appointed Debtor-In-Possession and be and hereby is retained in possession of all of its assets and properties, wherever located, and is hereby authorized, to continue the operation of its business and to manage its properties in the same manner and under the same methods as previously operated subject to this and further orders of this Court.

14. That without in any way limiting the generality of the foregoing, in connection with the operation of its business the Debtor, as Debtor-In-Possession, shall have full power and authority subject to this and further orders of this Court:

(a) To employ, discharge, and fix the compensation, salaries and wages for all managers, agents, employees and servants, upon such terms as may

seem necessary and advisable for the proper operation of its business and the management, preservation and protection of its properties;

(b) To pay and satisfy out of any funds now or hereafter coming into its possession all claims for wages, salaries and compensation of all managers, agents, employees and servants, for services hereafter rendered;

(c) To lease or sell inventory, merchandise, supplies and other property, and to render services, for cash or on credit;

(d) To purchase or otherwise acquire, for cash or on credit, such materials, equipment, supplies, services or other property as may be deemed necessary or advisable in connection with the operation of its business and the management and preservation of its properties;

(e) To enter into any contracts incidental to the normal use and operation of its business and the management and preservation of its properties;

(f) To keep its properties and operations insured in such manner and to such extent as it may deem necessary and advisable, and to pay such premiums as may be or become due on insurance policies thereon;

(g) To collect and receive all rentals, accounts receivable, credits, choses in action and other rights to the payment of money to the same extent as prior to the commencement of these proceedings, due or to become due, and to hold and retain all monies thus received so that they may be applied as provided under this subsequent order of this Court; and

(h) To pay and discharge out of any funds now or hereafter coming into its hands all taxes and similar charges lawfully incurred in the operation of said business and the preservation and maintenance of its properties since the filing of the Chapter 11 petition.

15. That the Debtor's present books of account be closed as of the date of the filing of the Chapter 11 petition herein, and that new books of account be opened, in which new books there should be kept proper accounts of the receipts, disbursements, income, expenses, and obligations of the Debtor-In-Possession, and of all transactions in connection with the operation of its business and the management, protection and preservation of its property.

16. That the Debtor be and it is hereby directed to file with the Clerk of this Court and with the United States Trustee a monthly report of operations including a profit and loss statement and verified financial statements.

17. In addition to any other order the Court may enter in respect of federal taxes, the Debtor-In-Possession is hereby directed and required to segregate and hold separate and apart from all other funds all moneys withheld from employees or collected from others for taxes under any law of any State or subdivision thereof and to deposit the moneys so withheld or collected in a separate bank account not later than the calendar week next after such collecting or withholding, and the Debtor-In-Possession shall retain such funds in such separate bank account pending further order of this Court, except that the Debtor-In-Possession is hereby authorized to pay from said bank account to the appropriate authorities the appropriate amounts at the times and in the manner prescribed by law.

18. The Debtor-In-Possession, be, and it hereby is, authorized to employ the executive officers and directors listed in Schedule "C" [omitted from publication] and pay compensation to them, for their services in the operation of the business and management of the property of the Debtor and Debtor's termination on October 24, of former officers and directors and the employment of their successors as shown on Schedule C be and hereby is approved.

19. All debts incurred by the Debtor-In-Possession from and after the filing of this Chapter 11 proceeding, whether for merchandise, supplies or other items purchased

or contracted for by the Debtor-In-Possession, shall constitute obligations to be paid in cash, in full, when and as the same become due, and said obligations shall have priority over all unsecured obligations of the Debtor-In-Possession incurred prior to the filing of the Chapter 11 petition.

20. A further hearing on this matter which will include a report by the Debtor of its performance during the prior period and particularly a comparison of that performance with its projections shown on Schedule B and a hearing on the Motion of certain creditors for Determination and Allowance of Secured Claims and for Adequate Protection shall be held on Monday, December 3, 1979 at 10:30 a. m.